PACIFIC GAS AND ELECTRIC
COMPANY et al., Plaintiffs,

v.

STATE ENERGY RESOURCES CON-
SERVATION AND DEVELOPMENT
COMMISSION et al., Defendants,

Natural Resources Defense Council, Inc.,
et al., Intervenors.

No. CV S–78–527–R.

United States District Court,
E. D. California.

April 25, 1980.

John R. McDonough, Laurence F. Jay, Ball, Hunt, Hart, Brown & Baerwitz, Beverly Hills, Cal., for plaintiffs.

William M. Chamberlain, Gen. Counsel, Dian M. Grueneich, Deputy Gen. Counsel, California Energy Resources Conservation and Development Commission, Sacramento, Cal., Michael R. Jencks, San Francisco, Cal., Kathryn Burkett Dickson, Sacramento, Cal., Antonio Rossmann, Sp. Counsel, San Francisco, Cal., for defendants.

Roger Beers, San Francisco, Cal., for intervenors.

## OPINION

REAL, District Judge.

Plaintiffs have brought this action asking that the California statutory scheme purporting to regulate the construction and operation of nuclear power plants be held to be unconstitutional. The claim of unconstitutionality in whole or in part of these nuclear power statutes is made on the ground that the subject matter or effect of individual sections of the California Public Resources Code are preempted under the Supremacy Clause of the United States Constitution by Congressional enactment of the Atomic Energy Act. Although the attack is specific, the statutes are broadly grouped as those first enacted by the Warren-Alquist Act in 1975 e. g. Sections 25500, 25502, 25504, 25511, 25512, 25514, 25516, 25517, 25520, 25523, 25528, and 25532 and the amendments of 1976 e. g. Sections 25524.1, 25524.2 and 25524.3.

Plaintiffs moved for summary judgment claiming there is no genuine issue of material fact. In response defendants and intervenors argue that summary judgment is inappropriate because they dispute the standing of plaintiffs to pursue this action and claim disputed factual issues must be resolved by trial.

The Court under Rule 56(d) Federal Rules of Civil Procedure may decide upon a Motion for Summary Judgment which material facts exist without substantial controversy and reserve for trial those material facts actually and in good faith controverted. Since pre-emption is the comparison of the parallel reaches of state and federal legislation only a question of law is presented by an attack on a state statutory scheme of intrusive regulation. Standing, on the other hand, can involve disputes as to the factual premises upon which a plaintiff attempts to justify the exercise of jurisdiction by a court. So it is here. The court will decide the question of pre-emption upon the motion for summary judgment. The matter of standing is now decided after trial of the factual issues presented.

## STANDING

Plaintiffs are public utilities franchised by the State of California and charged by California Public Utilities Code § 451 with the obligation to "furnish and maintain such adequate, efficient, just and reasonable service . . . as [is] necessary to promote the safety, health, comfort, and convenience of its patrons, employees, and the public." This obligation has been met by plaintiffs through the construction and maintenance of power generating plants now in operation using various available methods including the conversion of nuclear energy to electricity.

The power consumption demands of California users is much like California's weather—sometimes unusual—but generally and consistently optimistic. Controlled much by the increase in population and the general economic climate of the state's industry plaintiffs must plan ahead to what they anticipate the power generation needs will be as long as 12 to 14 years in the future. The planning process often requiring expenditure of hundreds of millions of dollars and the construction process often requiring investments in excess of a billion dollars are subject to regulation both state and federal. It is a claim of constitutionally prohibited overlapping regulation particularly in the

construction of electrical generating plants employing nuclear power that brings plaintiffs into conflict with defendants in this lawsuit.

Plaintiffs' claim of standing is based upon their individually expressed desire to employ the nuclear power plant option to meet future—and replace present—electric generation plant needs. Plaintiffs argue that California's regulatory scheme in the Public Resources Code effectively precludes them from planning and building for the nuclear option. Defendants contest plaintiffs' claim of need to use the nuclear option and assert that plaintiffs can meet the presently predictable growth in electricity demands through the year 2000 at least. So, defendants argue there is no present impact on plaintiffs sufficient to permit them to invoke the jurisdiction of this court to satisfy "the wish" of plaintiffs' chief executives.

Although the Court has heard much rhetoric on the merits and demerits of the industrial use of nuclear power, that is not what this case is all about. This Court has neither the jurisdictional power nor the personal inclination to enter the nuclear controversy through the vehicle of this dispute. A court may only act when a controversy is brought to it for decision. The decision then is made only upon the facts and the law presented and necessary for a just resolution of the dispute between the litigants. This case does not present the need to resolve what are political—legislative and executive—ramifications of the policy and climate for commercial exploitation of nuclear power.

The right of a party to invoke the working of the judicial process may present different considerations of standing, case or controversy, ripeness and mootness. In this case all these concepts merge under the rubric "standing."

■ Standing of plaintiffs must be determined because the jurisdiction granted by Article III of the United States Constitution to a federal court cannot be invoked simply because someone wants a decision on the constitutionality of a state statute. The time and space of a federal court and the efforts of a federal judge can be employed only to vindicate the rights of those aggrieved in a real way by the existence or application of an unconstitutional legislative enactment. The facility of stating the requirement and principles of standing belies the competing and sometimes difficult factual assertions made by the parties.

Plaintiffs have testified through their respective high level management that they are presently in need of planning ability to develop electric generation from nuclear fuel and are being precluded from that option by the California nuclear statutes challenged herein. Pacific Gas and Electric Company (hereafter P.G. & E.) has already expended many millions of dollars in the planning of its Stanislaus nuclear power plant project and maintains that it cannot proceed because of the requirements—and some failures to act—of the State Energy Resources Conservation and Development Commission of the State of California (hereafter Energy Commission). Defendants and intervenors have introduced evidence that they claim shows that P.G. & E. cannot and would not proceed with Stanislaus even if relieved of the obligations of the California statutes. They press upon the court the evidence of the reduced estimates of future electric power demand made by the California Public Utilities Commission (hereafter PUC) and the so called "pause" in the granting of nuclear power plant licenses by the Nuclear Regulatory Commission (hereafter NRC). Financial analyses that indicate P.G. & E. may not be able to finance another nuclear power plant until the Diablo Canyon plant is cleared for operation and the nuclear incident at Three Mile Island are added to shore up the claim of defendants and intervenors that P.G. & E. lacks standing.

■ Defendants' and intervenors' reliance on such evidence is misplaced on the question of standing. Standing cannot, and should not, be imposed or defeated by considerations that come outside the good faith concerns of a business for its survival. There is nothing in the evidence presented to the Court that would impugn the bona

fides of P.G. & E.'s concern for its planning needs in the immediate future. If that decision is made erroneously it is the stockholders of the company that will undoubtedly suffer. But neither the defendants, nor the intervenors, nor this Court has the responsibility for what is a uniquely management decision.

The claim of Southern California Edison Company (hereafter Edison) raises the same basic concerns on the part of each of the parties to the controversy. Edison's position mirrors P.G. & E.'s with the exception that Edison has not yet committed any funds to its Nuclear 1 and Nuclear 2 projects. The difference is not significant in its impact on standing.

## PRE-EMPTION

Preemption addresses the classic and natural functions created by a republican form of government in which state and federal intrusions upon the granted and reserved powers expressed in the United States Constitution must be reconciled. The doctrine emanates from the Supremacy Clause which provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

■ The Supremacy Clause renders invalid a state statute addressed to a subject matter that Congress, within its constitutional power, marks for the exclusive jurisdiction of the federal government, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 91 L.Ed. 1447, 67 S.Ct. 1146 (1947). *Jones v. Rath Packing Co.*, 430 U.S. 519, 51 L.Ed.2d 604, 97 S.Ct. 1305 (1977), or in a more subtle manner where the state statute substantially impedes the manifest operation of a fed-

eral statute in the field in which the federal statute purports to operate. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 55 L.Ed.2d 179, 98 S.Ct. 988 (1978); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 10 L.Ed.2d 248, 83 S.Ct. 1210 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 85 L.Ed. 581, 61 S.Ct. 399 (1941).

■ Nuclear power and its exploitation have been a uniquely national concern since the enactment of the first Atomic Energy Act in 1946 (Public Law 585, Chapter 724) [42 U.S.C.A. 2011 et seq.] recognized that "the development and utilization of atomic energy shall, so far as practicable, be directed toward improving the public welfare, increasing the standard of living, strengthening free competition in private enterprise and promoting world peace."[1] The control of the development of fissionable material as a source of energy for whatever purpose was placed exclusively in the hands of a federal agency, the Atomic Energy Commission. Congressional feelings towards exclusivity were so strong that Congress itself retained the power to review the licensing and use of atomic energy devices.

Congress made no change in its view with the enactment of the Atomic Energy Act of 1954. Recognizing the need for re-evaluation of the use of what now came to be called "special nuclear material" Congress re-iterated its desire to maintain national control of nuclear development. Senate Report No. 1699 expresses the concern thusly:

It is our firmly held conviction that increased private participation in atomic power development, *under the terms stipulated in this proposed legislation*, will measurably accelerate our progress toward the day when economic atomic power will be a fact. (emphasis added.)

The absolute nature of the preemption by Congress of regulation of nuclear power is comprehensively reviewed in *Northern States Power Company v. State of Minneso-*

---

1. Atomic Energy Act of 1946. Public Law 585 Chapter 724 Section 1(a), 1946 U.S.Code Congressional Service p. 722.

*ta*, 447 F.2d 1143 (8th Cir. 1971). A summary affirmance by the Supreme Court of Northern States (supra) 405 U.S. 1035, 31 L.Ed.2d 576, 92 S.Ct. 1307 makes the decision binding on this Court. The 8th Circuit in Northern States (supra) was expressly concerned with preemption of state regulation of radioactive effluents but the holding goes beyond that narrow concern. The Court says at p. 1154

. . . we hold that the federal government has exclusive authority under the doctrine of pre-emption to regulate the construction and operation of nuclear power plants, which necessarily includes regulation of the levels of radioactive effluents discharged from the plant.

The enactment of the 1946 Act and the clarification in the 1954 Act essentially reaffirming the 1946 Act makes clear the absolutism of the congressional preemption of nuclear power regulation. The scope of intrusion permissible by state regulation is relaxed only by the scope of the 1959 amendments enacting 42 U.S.C. § 2021. Those amendments recognize state regulation in limited areas covered by contracts between the NRC and a state, 28 U.S.C. 2021(b). The amendments further reiterate the exclusive responsibility of the NRC for "the construction and operation of any production or utilization facility," 42 U.S.C. § 2021(c)(1).

California has not contracted pursuant to 42 U.S.C. § 2021(b). It opted to enact a comprehensive regulatory scheme for regulation of the development of nuclear power in California.[2] It grounds the validity of its regulatory scheme on Section 2021(k) which provides

Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards.

To read the term "regulate activities for purposes other than protection against radi-ation hazards" as a broad renunciation of the exclusivity of the federal government's control of nuclear power development is just too much. *Northern States Power Company* (supra) at p. 1152 makes it clear that Congress expressly intended "that the federal government retain exclusive control over the *construction and operation* of nuclear reactors cannot be disputed." (emphasis supplied) The presence of Section 2021(k) does however, require the Court to make an analysis section by section of the legislation questioned by plaintiffs to determine the nature and effect of the preemption afforded by the Atomic Energy Act and its various amendments.

Plaintiffs have conceded the propriety of certain parts of the California regulatory scheme and therefore the Court need not tarry in a consideration of those provisions of the California Public Resources Code to which plaintiffs have made concessions of validity.

Federal regulation of the construction and operation of nuclear power plants in the United States is codified in Title 10 of the Code of Federal Regulations under the authority of the Atomic Energy Act and its various amendments from 1946 to the present. The regulations require a public utility to apply to the NRC [3] for a permit to construct and a license to operate a nuclear power plant. The applicant must satisfy the NRC of the adequacy of geology, seismology, design, safety systems, population density and environmental impact of the proposed site and finished plant. Rigorous inspection of both the construction and operation of the plant insure conformance to the requirements of the Atomic Energy Act and its implementing regulations.

California's regulatory scheme i. e., Public Resources Code Sections 25500, 25502, 25503, 25504, 25511, 25512, 25514, 25516, 25517, 25519, 25520, 25523, 25524.1, 25524.2, 25524.3, 25528 and 25532 require virtually the same submissions and determinations as

---

2. California Public Resources Code § 25500 et seq.

3. The Nuclear Regulatory Commission is the successor agency to the Atomic Energy Commission created by the Act of 1946.

those provided in the NRC licensing process. Overlapping requirements include but are not limited to geology, seismology, environmental impact, population density and design of the proposed plant. These requirements together with the limitations upon issuance of California licenses until the State Energy Commission has made certain findings concerning feasibility and methodology of waste disposal are either in conflict with or substantially impede the regulation of nuclear energy reserved to the federal government by the Atomic Energy Act of 1946, its various amendments and the power to regulate delegated pursuant to that legislation as set out more particularly in the Findings of Facts and Conclusions of Law filed concurrently herewith.

Judgment will be entered accordingly.